UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. ZEESHAN HAYAT KHAN, Defendant. | Case Nos.: 23-cr-2225-RSH<br>24-cr-300-RSH<br>26-cv-876-RSH<br><br>**ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE** |

Presently before the Court is defendant Zeeshan Khan's Motion to Vacate, Set Aside, or Correct his conviction and sentence pursuant to 28 U.S.C. § 2255. *See* Case No. 23-cr-2225, Dkt. No. 52 (the "Motion"). As set forth below, the Court denies Khan's Motion.

## I. BACKGROUND

On October 2, 2023, Khan applied for entry from Mexico to the United States at the San Ysidro Port of Entry in San Diego, California, as the driver, sole occupant, and registered owner of a Toyota Prius. After Khan was referred to secondary inspection by Customs and Border Protection ("CBP"), officers discovered 15 packages of cocaine

concealed in the roof of the vehicle, with a total weight of 17.70 kilograms. After Khan was arrested, officers found Khan's cell phone in the vehicle, and later searched the phone pursuant to a warrant. The phone contained evidence of Khan's drug trafficking. The phone also contained and video of child pornography, including videos involving the sexual abuse of toddlers, as well as videos that Khan had created of himself sexually abusing four minors. The underlying facts are discussed at greater length in the Presentence Report.

On October 31, 2023, the government charged Khan in an information with one count of importing cocaine in violation of 21 U.S.C. §§ 952 and 960. The case was assigned docket number 23-cr-2225-RSH. About four months later, on February 22, 2024, the government charged Khan in a separate information with one count of transporting material depicting minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(1). The second case was assigned docket number 24-cr-300-RSH.

On September 24, 2024, pursuant to two separate plea agreements, Khan entered a guilty plea to the charges. The U.S. Probation Office prepared a single Presentence Report that was docketed in both cases. *See* Case No. 24-cr-300, ECF Nos. 43 (Presentence Report), 51 (Addendum).[1] Khan's plea agreement in Case No. 24-cr-300 contained a provision stating that Khan waived "all rights to appeal or to collaterally attack his conviction and sentence, including any restitution order totaling up to $100,000, the length of term of supervised release, and any term of supervised release." ECF No. 35 at 15. The waiver provision further stated, "[t]he only exception is [Khan] may collaterally attack the conviction or sentence on the basis that defendant received ineffective assistance of counsel." *Id.*

///

---

[1] Unless otherwise specified, references herein to "ECF" refer to docket entries in 24-cr-300-RSH. In substance, it is the sentence in this case that Khan is collaterally attacking, although as explained below he filed this Motion in connection with his other criminal case.

On March 21, 2025, the Court sentenced Khan to a term of 240 months in custody in Case No. 24-cr-300, to run concurrently with a term of 70 months in custody in Case No. 23-cr-2225. The Court also imposed a 10-year term of supervised release subject to mandatory, standard, and special conditions; ordered restitution in the amount of $24,000; and imposed penalty assessments. ECF No. 52. At the end of the hearing, the defense confirmed Khan's waiver of appeal pursuant to the plea agreement. ECF No. 58 (transcript of Mar. 21, 2025 sentencing hearing) at 54. Judgment was entered in each case the same day. ECF No. 53.

On February 9, 2026, Khan filed this Motion in Case No. 23-cr-2225. *See* Case No. 23-cr-2225, Dkt. No. 52. The Motion was assigned the separate civil docket number of 26-cv-876-RSH.

Khan has explained that the Motion is directed only to Khan's 240-month sentence in Case No. 24-cr-300, the case involving importation of child sexual abuse material; it does not challenge the 70-month sentence in Case No. 23-cr-2225, the case involving importation of cocaine. *See* Case No. 23-cr-2225, Dkt. No. 69 (Khan's motion to correct docketing error and direct § 2255 filings to the proper criminal case) at 1. Thus, Khan has requested that the Court deem this Motion and related filings as pertaining to 24-cr-300. *Id.* The Court will do so.

The government opposes the Motion. *See* Case No. 23-cr-2225, Dkt. No. 61 (the "Opposition"). Khan has requested that the Court accept his oversized reply brief, which the Court hereby does. *See* Case No. 23-cr-2225, Dkt. No. 70 (the "Reply"); Dkt. No. 68 (Khan's motion to file oversized reply brief).

## II. LEGAL STANDARD

A federal prisoner may move the sentencing court to vacate, set aside or correct an unlawful sentence. 28 U.S.C. § 2255(a). A district court may deny a § 2255 motion without a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). If the Court determines relief is

warranted, it must "vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.*

## III. ANALYSIS

The Motion sets forth six grounds for relief, which the Court addresses in turn below.

### A. Ineffective Assistance of Counsel

Grounds One through Four of the Motion each allege ineffective assistance of counsel. To establish ineffective assistance of counsel, a defendant must show both that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Performance is deficient when counsel's identified acts or omissions fall "outside the wide range of professionally competent assistance." *Id.* at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide of range of reasonable professional assistance." *Id.* at 689. To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

#### *1. Ground One*

In Ground One, Khan argues that his attorney was ineffective for "fail[ing] to challenge" the applicability of two provisions under the U.S. Sentencing Guidelines: Section 2G2.2(b)(7) and (b)(4)(A). *See* Motion at 12.[2] The first of these provisions increases the offense level by five levels if 600 or more images are involved, and the commentary further states, "[e]ach video, video-clip, movie or similar visual depiction shall be considered to have 75 images." U.S.S.G. § 2G2.2, cmt. n. 6. Khan argues that his

---

[2] Because Defendant's Motion contains more than one series of page numbers at the bottom of each page, citations herein to the Motion are to the ECF-generated page number on the top right of each page.

attorney should have contested this ratio as unreasonable. Motion at 12. The second provision at issue imposes a four-level increase "[i]f the offense involves material that portrays (A) sadistic or masochistic conduct or other depictions of violence; or (B) sexual abuse or exploitation of an infant or toddler." U.S.S.G. § 2G2.2(b)(4). Khan contends his attorney should have argued that this enhancement was redundant and inapplicable because a separate provision, Section 2G2.2(b)(2), provides a two-level increase "[i]f the material involved a prepubescent minor or a minor who had not attained the age of 12 years."

Khan does not contest that these guidelines enhancements *by their own terms apply* to the facts he admitted in his plea agreement. Indeed, in that plea agreement, he expressly agreed to the application of these specific guidelines, admitted that "the offense involved more than 600 images of child pornography," and admitted transporting several videos depicting adults sexually abusing toddlers. ECF No. 35 at 4. In his reply brief, Khan clarifies that he is not faulting his attorney for failing to make arguments at sentencing that contradict his plea agreement; instead, "[t]he claim is that counsel failed to properly investigate, analyze, negotiate, and challenge the guidelines enhancements *before* Khan accepted the plea agreement." ECF No. 70 at 2 (emphasis added); *see also id.* at 3 (suggesting that "counsel failed to investigate the enhancements, failed to recognize available challenges, failed to explain their effect, or failed to negotiate a better guidelines framework"). In other words, Khan complains that his attorney did not secure a more favorable plea agreement for him, perhaps one in which he was not required to truthfully admit facts supporting the applicable guidelines enhancements.

Khan's argument is speculative, amounting to wishful thinking. Khan's plea agreements with the government provided him substantial benefits. In both cases, he avoided charges that could have been brought against him carrying mandatory minimum statutory sentences for importation of cocaine, or production of sexually explicit material involving minors. *See* 21 U.S.C. § 960(b)(1)(B) (providing 10-year mandatory minimum and maximum life sentence for offense involving five kilograms or more of mixture containing cocaine), 18 U.S.C. § 2251(a), (e) (providing 15-year mandatory minimum and

30-year maximum sentence for using minor to produce visual depiction of minor engaged in sexually explicit conduct). Additionally, under his plea agreements, the government agreed to recommend that his custodial sentences run concurrently rather than consecutively. Khan provides no basis to conclude that his attorney was deficient by failing to secure plea agreements that provided these same benefits, while also turning a blind eye to the videos and images the government seized from Khan's phone.

To the extent Khan's argument can be construed in terms of his attorney's alleged failure to argue for a downward variance from the guidelines, the Court addresses such arguments below.

***2. Ground Two Through Four***

In Grounds Two through Four, Khan claims his counsel was deficient for failing to raise various arguments at sentencing.

In Ground Two, Khan argues that his attorney was ineffective for failing to argue that the sentencing guidelines were "exaggerated," "inflated," and "outdated" as applied to him, and that the guidelines "fail to carefully differentiate between offenders based on their culpability and dangerousness."[3] Motion at 18. Khan contends that he would have received "a different outcome with a lower sentence if Trial Counsel had argued the court should hold the guidelines to less 'weight.'" *Id.* at 19. He also states that non-production "should be afforded less weight in the sentencing process."[4] *Id.* at 18.

In Ground Three, Khan argues that his attorney was ineffective for failing to make a host of other arguments: (1) that a lengthy sentence would harm Khan's rehabilitation and access to treatment programming; (2) that Khan would face unsafe and dangerous conditions in prison as a sex offender; (3) that Khan had strong family ties; and (4) that

---

[3] This argument is puzzling, given that Khan did in fact sexually abuse minors. His conduct demonstrated both culpability and dangerousness.

[4] This argument, too, is puzzling, given that Khan admitted to producing videos of himself sexually abusing minors.

Khan would suffer collateral consequences of his conviction, including severe stigma and sex offender registration requirement. *Id.* at 21–29. Additionally, Khan argues that his attorney was ineffective (5) "when trial counsel allowed the prosecution to bring up dismissed conduct from 2016 involving accusations of alleged kidnapping with intent to rape." *Id.* at 30. Khan contends that this conduct could not have been considered at sentencing because he did not admit in in the "relevant conduct" section of his plea agreement. *Id.*

In Ground Four, Khan argues that his attorney was ineffective because of "the cumulative effect of trial counsel's multiple errors," including the errors alleged in the previous grounds, as well as errors such as counsel's "failure to argue 3553(a) factors and parsimony provision" and "failure to ensure [that the] Court consider all possible grounds for variance." *Id.* at 32.

Khan appears to have simply compiled a master list of arguments that could have been made in his case and treats his attorney's failure to raise each one as deficient performance. For the most part, the arguments that Khan now invokes are highly generalized. Some of these arguments might be made in every sex offense case (like the stigma associated with such a conviction, the need to register as a sex offender, or the danger faced in custody); others might be made in every case involving a potentially lengthy sentence (like harm to rehabilitative prospects); and still other arguments might be made in every criminal case (like the parsimony principle or the contention that guidelines exaggerate culpability).

Khan's approach is fundamentally flawed. This Court is well aware of such arguments and such general considerations in sentencing. Effective advocacy at sentencing does not consist in making every conceivable argument, but in making persuasive arguments, including arguments that are focused and personalized. Accordingly, Khan's attorney focused at sentencing on factors special to his case, such as Khan's documented mental health conditions, his own abuse, the traumatic brain injury Khan's sustained after being hit by a car, his embrace of mental health and sex offender treatment following his

arrest, and what counsel proffered as Khan's genuine remorse and insight into the suffering of his victims. Khan's Motion takes no stock whatsoever of the arguments his attorney did make.

In fact, Khan's attorney made many of the arguments he now faults her for failing to make. For example, Khan argues that his attorney was ineffective for failing to argue his "strong family ties" as a basis for a variance. Motion at 32. But he is mistaken. At the hearing, his attorney explained that Khan's uncle was present in the courtroom and had flown in from Chicago to support Khan. *See* ECF No. 58 at 4. Later in the hearing, she reiterated her point about Khan's family support. *Id.* at 15–16. In advance of the hearing, she submitted to the Court a letter from Khan's uncle attesting to his support. ECF No. 48-1 at 2. Indeed, Khan's motion concedes that his family support "is proven by the countless letters *that trial counsel obtained from his family* in support of him getting a lower sentence at sentencing." Motion at 26 (emphasis added).

Khan also faults his counsel for her failure to make arguments in regard to his rehabilitation. But Khan's sentencing memorandum argued that the Court should consider rehabilitation among other factors, and that prolonged incarceration would negatively impact Khan's rehabilitation and mental health. ECF No. 48 at 8–9, 11. At the hearing, counsel again raised the need for rehabilitation and reiterated that Khan's pretrial detention had disrupted his efforts to obtain treatment. ECF No. 71 at 12–13. The letter that counsel submitted from Khan's uncle similarly urged that a lengthy prison sentence would fail to advance his rehabilitation, and would fail to provide needed support and assistance. ECF No. 48-1 at 2.

Other assertions by Khan of his counsel's deficiency are likewise unfair and ignore the record. She argued Khan's susceptibility to abuse by other inmates, and the fact that he was attacked several times while in pretrial detention and had to be placed in segregated housing for his protection. ECF No. 48 at 12. She also urged the Court to consider Khan's sex offender registration in imposing a lower sentence. Admittedly, she was not making the argument that Khan now envisions, that he is somehow entitled to a shorter custodial

sentence to compensate for the burden his sex offender registration. Instead, she made the more subtle argument that sex offender registration on supervised release will be an adequate means of deterrence, as an alternative to lengthy custody. *Id.* at 11. Khan's counsel also argued that the advisory sentencing guidelines were unreasonably cumulative, arguing that the enhancement for use of a computer applied in the vast majority of cases and had become outdated and arbitrary. *Id.* at 13. And she reminded the Court of the parsimony principle, under which the Court must impose a sentence that is sufficient but not greater than necessary to serve the statutory purposes of sentencing. *Id.* at 6–7.

Finally, Khan's argues that his attorney was ineffective "when trial counsel allowed the prosecution to bring up dismissed conduct from 2016 involving accusations of alleged kidnapping with intent to rape." Motion at 30. This, too, ignores the record. As Khan's plea agreement explained to Khan in advance, in connection with his sentencing, the U.S. Probation prepared a presentence report. ECF No. 35 at 10. Probation included information in the Presentence Report about Khan's criminal history, including his arrest in connection with the incident in question. *See* ECF No. 43 ¶¶ 83–86. Khan's counsel would have no basis for forcing the Probation Office to excise this information. Instead, she investigated the incident, and proactively addressed the defense's view of that incident in her comments to the Probation Office—and her advocacy was duly noted in the Presentence Report. *Id.* ¶ 86. Khan's counsel likewise proactively addressed the incident in her presentation during the sentencing hearing. ECF No. 58 at 18–19.

The sentencing advocacy of Khan's attorney was competent and thorough. Her performance was not deficient in failing to argue Khan's sentence in the manner that he now claims she should have. Khan has not overcome the "strong presumption that counsel's conduct falls within the wide of range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

///

///

///

### B. Special Conditions of Supervision

In Ground Five, Khan challenges two special conditions of supervision that were ordered by the Court. The first condition at issue is Special Condition No. 2:

> 2. Not initiate any contact (personal, electronic or otherwise) or associate with anyone under the age of 18, unless in the presence of a supervising adult who is aware of the offender's deviant sexual behavior and nature of offense and conviction, with the exception of the offender's biological children, unless approved in advance by the probation officer.

ECF No. 53 at 5. Khan argues that this condition "prohibit[] him … from his own minor family," and infringes his right to family association. Motion at 28. Khan misconstrues the condition. It is not a blanket prohibition on his association with minor family members. The restriction on initiating contact or associating with a minor does not apply: (1) when the contact or association is the presence of a supervising adult with appropriate knowledge of Khan's circumstances; (2) to any biological children that Khan may have; or (3) where the Probation Office provides advance approval. Khan's motion fails to specify to what "minor family" he is referring, and the Presentence Report does not mention any minor family members, ECF No. 43 ¶¶ 88–97, but to the extent he seeks to have unsupervised contact with such hypothetical minors in the future who are not his own biological children, the condition does not foreclose such contact, but requires him to first obtain permission of the Probation Office or the Court.

The second condition at issue is Special Condition No. 7:

> 7. Not use or possess any computer, computer-related devices (pursuant to 18 U.S.C. § 1030(e)(1)), which are capable of accessing, storing, or transmitting visual depictions of "sexually explicit conduct" involving children as defined by 18 USC § 2256(2) and/or "actual sexually explicit conduct" involving adults as defined by 18 USC § 2257(h)(l), without prior approval by the court or probation officer, all of which are subject to search and seizure. Such devices include, but are not limited to smart phones, smart watches, video game consoles, digital tablets, I-pods, and not excluding anything else that has the capability of doing so in the future and can communicate data via modem,

> dedicated connections or cellular networks, and their peripheral equipment.
>
> The offender must consent to installation of monitoring software and/or hardware on any computer or computer-related devices owned or controlled by the offender that will enable the probation officer to monitor all computer use and cellular data. The offender must pay for the cost of installation of the computer software.

ECF No. 53 at 5. Khan argues that this restriction "prohibits his computer internet usage" and is therefore "extreme." Motion at 30. Again, Khan misconstrues the condition. It is not a blanket prohibition on internet usage, but instead is tied to prior approval by the court or Probation Office.

Khan additionally contends that the Court should have applied "strict scrutiny" to Special Condition No. 2 and should have made "adequately explained supporting findings" as to Special Condition No. 7. Motion at 34, 36. The two special conditions at issue were recommended by the U.S. Probation Office in the Presentence Report, filed on December 19, 2024. ECF No. 43 at 35–36.[5] Khan did not file objections to the Presentence Report as required by Criminal Local Rule 32.1(a)(5), nor did he object to the special conditions at the time of sentencing. He did not argue, as he does now, that the special condition will interfere with his "right to intimate association" with hypothetical minor family members. Motion at 35. Quite the opposite. Khan's sentencing memorandum expressly stated that he agreed to "all" of the special conditions that Probation had recommended. Indeed, he affirmatively presented his agreement to those conditions as a sign of his rehabilitation, arguing that his agreement to these conditions of supervised release contributed to protection of the public:

> **Protecting the Public:** Mr. Khan is extremely motivated to rehabilitate himself and become a law abiding member of society. Prior to his arrest in this case, Mr. Khan voluntarily and genuinely sought treatment but

---

[5] At the sentencing hearing, Khan's counsel confirmed in his presence that she had reviewed the Presentence Report with him. ECF No. 58 at 2.

> was unable to engage in and complete the treatment because of his pre-trial incarceration. A lengthy prison sentence will have a significant negative impact on Mr. Khan, his mental health issues, his treatment, and his rehabilitation. Lifetime registration as a sex offender and a lengthy term of supervised release will help provide necessary structure and ensure that Mr. Khan receives effective sex offender treatment and is appropriately monitored. Mr. Khan agrees with and is willing to abide by all of the recommended conditions of supervision listed in the pre-trial services report.
>
> **Rehabilitation:** Mr. Khan's genuine desire for and efforts at rehabilitation are a compelling reason for this court to depart further downward in determining the appropriate sentence.

ECF No. 48 at 11 (bold in original; underlining added for emphasis). At the hearing, Khan's attorney reiterated, "[a]s you see in the sentencing memo, we ask for at least ten years of supervised release. He knows that structure will be very important to him." ECF No. 58 at 16. Referring to Probation's sentencing recommendation, Khan's attorney stated in closing her remarks, "[w]e agree with the 16-year sentence, and we believe that will satisfy protecting the public as well as rehabilitating Mr. Khan so that nothing like this ever happens again." *Id.* at 40.

It is disappointing that Khan would not only expressly agree to special conditions of supervision, but seek to use his embrace of supervision in pursuit of leniency—and later argue that those same conditions are unlawful. Whatever his present rehabilitative prospects, he has waived the argument he now advances.

Additionally, both special conditions were necessary and appropriate here, given Khan's acts of sexual abuse of minors, his use of computers to obtain and possess images depicting the sexual abuse of minors including toddlers, and his dangerousness. The Ninth Circuit has upheld similar conditions in appropriate cases.[6]

---

[6] *See United States v. Goddard*, 537 F.3d 1087, 1089–90 & n.2 (9th Cir. 2008) (finding no abuse of discretion where the district court imposed a special condition that "[t]he

### C. Breach of Plea Agreement

In Ground Six, Khan argues that the government breached the plea agreement by discussing at sentencing the 2017 incident described in the Presentence Report, ECF No. 43 ¶¶ 83–86, and addressed above.

Plea agreements are contracts between the government and a defendant, and as such, are governed by principles of contract. *United States v. Farias-Contreras*, 104 F.4th 22, 28 (9th Cir. 2024) (en banc). The government breaches its agreement by, among other things, "implicitly arguing for a sentence greater than the terms of the plea agreement specified that the prosecution would recommend." *Id.*

There was no breach by the government here. Khan's plea agreement placed no restriction on the government's ability to truthfully discuss his prior record of arrests. Furthermore, it was Khan's attorney, rather than the government, who first raised the topic during the sentencing hearing. *See* ECF No. 58 at 18–19.[7] The prosecutor returned to the

---

defendant shall use only those computers and computer-related devices, screen user names, passwords, e-mail accounts, and internet service providers (ISPs) as approved by the Probation Officer"); *United States v. Antelope*, 395 F.3d 1128, 1142 (9th Cir. 2005) (upholding special condition prohibiting "possess[ing] or us[ing] a computer with access to any 'on-line computer service' at any location (including employment) without the prior written approval of the probation department"); *United States v. Rearden*, 349 F.3d 608, 620 (9th Cir. 2003) ("We are persuaded that limiting Rearden's Internet access without prior approval of the Probation Office is reasonably related to the offense that involved e-mail transmissions of quite graphic child pornography, and to the important goal of deterring him during the period of supervision from reverting to similar conduct, and thus, to rehabilitation and protecting the public. The condition does not plainly involve a greater deprivation of liberty than is reasonably necessary for the purpose because it is not absolute; rather, it allows for approval of appropriate online access by the Probation Office."); *United States v. Bee*, 162 F.3d 1232, 1235 (9th Cir. 1998) ("By prohibiting Bee from having contact with children and from loitering near places primarily used by children, the district court properly exercised its broad discretion in setting the terms and conditions of supervised release.").

[7] As discussed above, Khan's attorney handled the topic in a manner consistent with sound advocacy.

topic only briefly, *id.* at 33–34, and the prosecutor's remarks were not inflammatory, nor did they implicitly argue for a sentence greater than what the plea agreement permitted. The prosecutor simply argued that even accepting Khan's version of the incident, his arrest in that case should have been a "wakeup call" that led to address his behavior and seek treatment. *Id.* at 34.

## IV. CONCLUSION

For the foregoing reasons, the files and records in this case conclusively show that Khan is not entitled to relief on any of the grounds presented in the Motion. Accordingly:

1. Khan's Motion [ECF No. 52 in Case No. 23-cr-2225] is **DENIED**. The Court shall enter this order in each of Case Nos. 23-cr-2225, 24-cr-300, and 26-cv-876.

2. Additionally, in Case No. 23-cr-2225:

a. Khan's motion for leave to file an oversize reply brief [ECF No. 68] is **GRANTED**.

b. Khan's motion to correct docket [ECF No. 69] is **GRANTED** as set forth herein.

3. Judgment has previously been entered in Case Nos. 23-cr-2225 and 24-cr-300. The Clerk of Court is directed to close Case No. 26-cv-876.

**IT IS SO ORDERED.**

Dated: August 28, 2026

Robert S Huie

Hon. Robert S. Huie
United States District Judge